IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
AIKEN DIVISION

| | |
|---|---|
| Pamela Grim, M.D., | C/A No. 1:17-cv-02937-DCC |
| Plaintiff, | |
| v. | **OPINION AND ORDER** |
| Low Country Health Care System, Inc.; Ashley Barnes; Richard Boyles, M.D.; | |
| Defendants. | |

This matter comes before the Court on Defendants' Partial Motion to Dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). Plaintiff filed a Response in Opposition, ECF No. 7, and Defendants filed a Reply, ECF No. 8. Therefore, the Motion is ripe for review.

## I. Procedural and Factual History[1]

On February 8, 2016, Defendant Low Country Health Care System, Inc. ("Low Country") offered Plaintiff a contract as a family physician with a three-year term of employment. ECF No. 1-2 at 3. Plaintiff accepted the offer and began working for Low Country the next month. *Id.* A short time later, a patient requested a prescription for Xanax from Plaintiff, stating that he had previously been prescribed the medication. *Id.* Plaintiff reviewed a prescription database and determined that the patient had not been prescribed the medication before. *Id.* The patient then acknowledged that he had not been prescribed the medication and had, instead, obtained the medication from family

---

[1] In light of the procedural posture of this case, the factual allegations are taken from Plaintiff's Complaint.

members. *Id.* Thereafter, the patient's mother complained to Low Country about Plaintiff, and Low Country's CEO, Defendant Ashley Barnes, approached Plaintiff and "told Plaintiff that Plaintiff was 'never' to refuse to prescribe controlled substances to patients unless there was clear evidence of illegal behavior on the patient's part, despite Defendant Barnes's lack of a medical degree or license." *Id.* at 3–4.

Several months later, Low Country opened a clinic, which was staffed by Physician's Assistant Eric Newman and Plaintiff. *Id.* at 4. Newman frequently missed work, and Plaintiff noticed that "Newman's patients were being prescribed an abnormally high amount of controlled substances without proper controls in place, i.e., drug screening, consultations with [a prescription] database, and lack of documentation." *Id.* One day when Newman was absent from work, "Plaintiff notified an administrator to inform Mr. Newman's patients that they would not be receiving their usual prescription of controlled substances after seeing her should she be covering the clinic due to Mr. Newman's absence." *Id.* Thereafter, Low Country requested that Plaintiff sign on as an "alternative supervisor" for all its mid-level providers. *Id.* Although Plaintiff had previously served as a primary and alternative supervisor for other mid-level providers, she refused to sign for Newman in light of his prescribing habits. *Id.* at 4–5. Despite this, another physician employed by Low Country tried to deceive Plaintiff into signing for Newman and, ultimately, pressured her into signing the requisite forms.

After signing the forms, Plaintiff reviewed South Carolina law related to supervision of mid-level providers and requested a copy of Low Country's policies regarding the same. *Id.* at 5. Low Country never provided Plaintiff with a copy of the policies, and Plaintiff determined that Low Country was violating South Carolina law regarding the

physician review of mid-level practitioners' charts.  *Id.*  Plaintiff then approached Defendant Richard Boyles, M.D.—Low Country's Chief Medical Officer—regarding her concerns.  *Id.*  Defendant Boyles told Plaintiff that Low Country is not required to perform chart reviews.  *Id.*

Low Country continued to ask Plaintiff to substitute for Newman, and she again noticed questionable prescriptions of controlled substances.  *Id.* at 5–6.  Plaintiff informed Defendant Boyles, who asked her to submit a letter detailing her concerns.  *Id.* at 6.  A short time later, Plaintiff resigned as Newman's alternate supervisor and submitted a fifteen-page letter to Defendant Boyles and Defendant Barnes outlining her concerns.  *Id.*  Several days later, Plaintiff supplemented her letter with additional proof of Newman's questionable prescribing habits.  *Id.*  In response, Defendants informed Plaintiff that Newman would be disciplined; however, no changes occurred, which led Plaintiff to post a copy of South Carolina's laws for prescribing controlled substances on an office wall.  *Id.*  Defendant Barnes responded by requesting a meeting with Plaintiff and Defendant Boyles.  *Id.*  At the meeting, Defendant Barnes told Plaintiff that her actions were "not how things are done – that Plaintiff needed to write letters."  *Id.*  Thereafter, Defendants began retaliating against Plaintiff by removing her internet access, removing her access to patient medical records, and forcing Plaintiff to work while sick.  *Id.* at 7.  When Plaintiff brought these actions to Defendants' attention, Defendant Barnes terminated Plaintiff's employment, contending that Plaintiff was "not a good fit" for the clinic and citing "patient complaints and interpersonal problems."  *Id.*

Plaintiff filed an action in the Court of Common Pleas for the County of Allendale, South Carolina, alleging the following causes of action: (1) breach of contract; (2) violation

of the Whistleblower Protection Act; (3) defamation; (4) civil conspiracy; and (5) wrongful discharge-public policy ("WDPP"). *Id.* at 7–11. Defendants removed the action to federal court and filed a Partial Motion to Dismiss, seeking dismissal of Plaintiff's defamation, civil conspiracy, and WDPP claims. ECF No. 5. Plaintiff filed a Response in Opposition, ECF No. 7, and Defendants filed a Reply, ECF No. 8. Therefore, the matter has been fully briefed and is ripe for the Court's review.

## II. Legal Standard

Rule 12(b)(6) of the Federal Rules of Civil Procedure permits the dismissal of an action if the complaint fails "to state a claim upon which relief can be granted." Such a motion tests the legal sufficiency of the complaint and "does not resolve contests surrounding the facts, the merits of the claim, or the applicability of defenses . . . . Our inquiry then is limited to whether the allegations constitute 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992) (internal quotation marks and citation omitted). In a Rule 12(b)(6) motion, the court is obligated to "assume the truth of all facts alleged in the complaint and the existence of any fact that can be proved, consistent with the complaint's allegations." *E. Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000). However, while the Court must accept the facts in a light most favorable to the nonmoving party, it "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." *Id.*

To survive a motion to dismiss, the complaint must state "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570(2007). Although the requirement of plausibility does not impose a probability

requirement at this stage, the complaint must show more than a "sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint has "facial plausibility" where the pleading "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

III. Analysis

Turning first to Plaintiff's defamation claim, Plaintiff asserts that her "termination and the investigations into patient complaints and interpersonal problems were common knowledge and were published and republished by [Defendants to] patients, staff and the public at large." ECF No. 1-2 at 8. Plaintiff further alleges that the defamatory actions "have directly and indirectly promulgated to the public at large the false insinuation that Plaintiff is unfit in her profession." *Id.* at 8–9.

In order to succeed on the defamation claim, Plaintiff must be able to show: "'(1) a false and defamatory statement was made; (2) the unprivileged publication was made to a third party; (3) the publisher was at fault; and (4) either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication.'" *Fountain v. First Reliance Bank*, 730 S.E.2d 305, 309 (S.C. 2012) (quoting *Erickson v. Jones St. Publishers, LLC*, 629 S.E.2d 653, 664 (S.C. 2006)). "A defendant in a defamation action may assert the affirmative defense of conditional or qualified privilege." *Harris v. Tietex Int'l Ltd.*, 790 S.E.2d 411, 415 (S.C. Ct. App. 2016) (stating elements of qualified privilege). South Carolina Courts have "previously found the qualified privilege applies 'to situations in which an employee's job performance is properly evaluated.'" *Id.* (quoting *Wright v. Sparrow*, 381 S.E.2d 503, 506 (S.C. Ct. App. 1989)). "Where the occasion gives rise to a qualified privilege, there is a prima facie presumption to rebut the

inference of malice, and the burden is on the plaintiff to show actual malice or that the scope of the privilege has been exceeded." *Swinton Creek Nursery v. Edisto Farm Credit, ACA*, 514 S.E.2d 126, 134 (1999) (citations omitted). "To prove actual malice, the plaintiff must show that the defendant was activated by ill will in what he did, with the design to causelessly and wantonly injure the plaintiff; or that the statements were published with such recklessness as to show a conscious disregard for plaintiff[']s rights." *Id.* (citation omitted).

Here, Plaintiff fails to provide facts establishing how the information was published, when the information was published, or what information specifically was published by the Defendants. Accordingly, the defamation claim fails to provide the necessary facts to plausibly support the conclusory allegations made by the Plaintiff. *See, e.g., Washington v. Aiken Cty. Sheriffs Office*, No. 1:16-cv-001673-JMC, 2017 WL 3048581, at *4 (D.S.C. July 18, 2017) (dismissing defamation claims where Plaintiff "failed to allege which statements were false and defamatory and the unprivileged manner in which they were allegedly published or communicated"); *Doe v. Cannon*, No. 2:16-cv-00530-RMG, 2017 WL 591121, at *1 (D.S.C. Feb. 14, 2017) ("Plaintiff has failed to state a claim against [Defendants] for defamation because her Complaint does not state with specificity the time, place, medium, and listener of the alleged defamatory statements." (citations omitted)). Accordingly, Plaintiff's defamation claim is dismissed without prejudice.

As to the civil conspiracy claim, Plaintiff asserts that Defendants Barnes and Boyles "acted outside of the scope of their employment and in abuse of their positions to lobby for the ouster of Plaintiff." ECF No. 1-2 at 9. Plaintiff further alleges that Defendants Barnes and Boyles "harassed Plaintiff for several months and particularly over the end of

her tenure on the basis of personal agendas and under the influence of ulterior motives," which has "isolate[d] Plaintiff in her lifelong field of employment on the basis of the same agendas and motives." *Id.* Plaintiff contends that this civil conspiracy has caused her "to be ostracized, isolated, and essentially black-listed in her profession" as well as causing "personal injury[,] including diminished health, increased stress and anxiety, as well as depression." *Id.* at 10. This, in turn, has caused Plaintiff to suffer "a loss of her right and ability to earn a living and a loss of future earnings and diminished quality of life . . . ." *Id.*

In order to succeed on her civil conspiracy claim, Plaintiff must prove: "the combination of two or more people, (2) for the purpose of injuring the plaintiff, (3) which causes special damages." *Pye v. Estate of Fox*, 633 S.E.2d 505, 511 (S.C. 2006) (citations omitted). Plaintiff "must plead additional acts in furtherance of the conspiracy separate and independent from other wrongful acts alleged in the complaint, and the failure to properly plead such acts will merit the dismissal of the claim." *Hackworth v. Greywood at Hammett, LLC*, 682 S.E.2d 871, 875 (S.C. Ct. App. 2009). Similarly, "[i]f a plaintiff merely repeats the damages from another claim instead of specifically listing special damages as part of [her] civil conspiracy claim, [her] civil conspiracy claim should be dismissed." *Id.* (citation omitted). Further, South Carolina courts have consistently held that a corporation's agents are incapable of conspiring with the corporation. *McMillan v. Oconee Mem'l Hosp., Inc.*, 626 S.E.2d 884, 886–87 (2006). However, this "intracorporate conspiracy" doctrine is limited to persons acting within the scope of their employment.

Here, Plaintiff asserts her civil conspiracy claim against only the individual Defendants and alleges that these Defendants acted in concert outside of their scope of

employment and with a personal agenda "to lobby for the ouster of Plaintiff."  ECF No. 1-2 at 9.  Yet Plaintiff offers no supporting factual allegations to show any conduct outside of the scope of employment and offers no information about the individual Defendants' personal agendas.  Therefore, the Court finds these conclusory allegations are insufficient to give rise to a plausible claim for civil conspiracy.  Accordingly, Plaintiff's civil conspiracy claim is dismissed without prejudice.

Finally, as to the WDPP claim, Plaintiff does not claim to be an employee at will.  Instead, Plaintiff's Complaint notes that she was employed pursuant to a three-year contract.  ECF No. 1-2 at 3.  As Defendants have admitted the existence of the contract, "Plaintiff concedes that she cannot prevail on a [WDPP] cause of action."  Therefore, Plaintiff's WDPP claim is dismissed with prejudice.

IV. **Conclusion**

For the foregoing reasons, the Defendants' Partial Motion to Dismiss, ECF No. 5, is **GRANTED IN PART** and **DENIED IN PART** as set out in this Order.  Plaintiff is given fourteen (14) days to amend her pleadings with respect to her defamation and civil conspiracy claims.

IT IS SO ORDERED.

                                                                                     s/Donald C. Coggins, Jr.
                                                                                     United States District Judge

July 6, 2018
Spartanburg, South Carolina